UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                                   Case No. 13-20160

vs.                                                HON. MARK A. GOLDSMITH

DONTEA CHAVEZ TOLBERT,

    Defendant.
_____/

**OPINION & ORDER**
**DENYING DEFENDANT'S MOTION FOR COMPASSIONATE**
**RELEASE (Dkt. 55)**

In 2013, Defendant Dontea Tolbert was sentenced to eight years' imprisonment for armed robbery and possession of a short-barreled shotgun during and in relation to a crime of violence. 11/18/13 Judgment (Dkt. 16). Just a few months after being released from prison in 2020, Tolbert committed multiple violations of his supervised release conditions, including the condition that he not commit any further crimes. 8/17/21 at 1–2 Judgment (Dkt. 53). Tolbert committed further crimes by illegally possessing a firearm, possessing cocaine, and committing an assault. For these supervised release violations, the Court revoked Tolbert's supervised release and sentenced him to 46 months' imprisonment. Id. at 3. Tolbert is currently incarcerated at the Federal Correctional Institute in Milan, Michigan, and his anticipated release date is January 10, 2024.

This matter is now before the Court on Tolbert's motion for compassionate release (Dkt. 55). He argues that he has health conditions that increase his risk of severe illness and death from COVID-19. The Government filed a response (Dkt. 57), and Tolbert filed a supplemental brief through counsel whom he retained after filing his motion (Dkt. 63). Having considered all briefing and record

materials submitted by the parties, the Court concludes that Tolbert is not entitled to compassionate release. Accordingly, the Court denies Tolbert's motion.[1]

## I. ANALYSIS

The First Step Act (FSA) modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3582(c), such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences. United States v. Ruffin, 978 F.3d 1000, 1003–1004 (6th Cir. 2020).[2] Before granting a compassionate release motion, a district court must engage in a three-step inquiry: (i) the court must find that "extraordinary and compelling reasons warrant [a sentence] reduction"; (ii) it must ensure "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (iii) it must "consider[] all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." United States v. Jones, 980 F.3d 1098, 1101 (6th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). If all of those requirements are met, the district court "may reduce the term of imprisonment," but it need not do so. 18 U.S.C. § 3582(c)(1)(A).

Regarding the first step of the inquiry, the United States Court of Appeals for the Sixth Circuit has held that, with respect to motions for compassionate release filed by imprisoned individuals, "extraordinary and compelling" reasons are not limited to those set forth in U.S.S.G. § 1B1.13. Jones, 980 F.3d at 1109. It has further held that "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the [FSA], district courts have full discretion in the interim to determine

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2).

[2] Before an inmate moves for compassionate release under § 3582(c)(1), the inmate must either exhaust his or her administrative remedies with the Bureau of Prisons (BOP) or wait 30 days from when the inmate filed a request with his or her warden. 18 U.S.C. § 3582(c)(1)(A); United States v. Alam, 960 F.3d 831, 832 (6th Cir. 2020). Here, the Government concedes that Tolbert has met the exhaustion requirement. See Resp. at 3.

whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." Id.

The Court considers (i) whether extraordinary and compelling circumstances compel Tolbert's release, and (ii) whether the § 3553(a) factors support Tolbert's release.

### A. Extraordinary and Compelling Circumstances

With respect to motions for compassionate release premised on a defendant's fear of contracting COVID-19, the Sixth Circuit has held that "generalized fears of contracting COVID-19, without more, do not constitute a compelling reason" to grant compassionate release. United States v. Ramadan, No. 20-1450, 2020 WL 5758015, at *2 (6th Cir. Sept. 22, 2020). Courts generally consult the guidance on high-risk factors published by the Centers for Disease Control and Prevention (CDC) to determine whether a defendant's specific conditions place him at a higher risk of suffering severe illness from COVID-19. See United States v. Elias, 984 F.3d 516, 521 (6th Cir. 2021).

Tolbert contends that various underlying health conditions—a "history of high blood pressure," shortness of breath, a "history of sickle cell trait," a "history of mental health issues," and schizoeffective disorder—increase his risk of severe illness and death from COVID-19. Mot. at 2. As the Government points out, see Resp. at 3, Tolbert's medical records confirm that he has hypertension and sickle cell trait; however, they do not reflect that he has shortness of breath or any current mental health issue other than anxiety disorder, see 1st Medical Records at PageID.220, 225, 234 (Dkt. 58-1).[3] Tolbert's hypertension, sickle cell trait, and anxiety disorder do not justify releasing him.

---

[3] Although Tolbert had a moderate, single episode of major depressive disorder in the past, as of 2019, this condition was in remission. See 1st Medical Records at PageID.227. Further, Tolbert's

3

Although the CDC recognizes hypertension as a condition that "can" make it more likely that an individual will get severely ill from COVID-19, it does not recognize borderline hypertension (i.e., pre-hypertension) as such a condition.[4] Hypertension is defined as a blood pressure reading of 130–139/80–89 mm Hg or above; thus, as of 2019, Tolbert was classified as borderline hypertensive given his blood pressure reading of 120–139/80–90 mm Hg. 1st Medical Records at PageID.220.[5] Tolbert's medical records reflect that, as of 2019, his pre-hypertension could have been managed through diet, exercise, and medication. See id. at PageID.224. The Government suggests, see Resp. at 3, that Tolbert worsened his condition from prehypertension to hypertension, see 2d Medical Records at PageID.293 (Dkt. 58-2) (describing Tolbert's hypertension as of 2021 as "essential"), by refusing to take medication, see 1st Medical Records at PageID.224 (noting that Tolbert had gone off his medication). If true, Tolbert's refusal to take medication to help his blood pressure would arguably prevent his hypertension from being an extraordinary and compelling reason to release him. See United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021) (explaining that an inmate's self-induced health predicament—such as an inmate's vulnerability to COVID-19 due to the inmate's refusal of the COVID-19 vaccine—cannot serve as an extraordinary and compelling reason to release the inmate).

In any case, even though Tolbert is now hypertensive, courts "routinely" decline to grant compassionate release where an inmate's hypertension can be well-managed through medication.

---

medical records reveal that his "[h]istory of schizophrenia" has been "resolved" as of 2019. Id. at PageID.235.

[4] CDC, "People with Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 14, 2021).

[5] For an explanation of blood pressure readings, see Mayo Clinic, "Blood Pressure Chart: What Your Reading Means," https://www.mayoclinic.org/diseases-conditions/high-blood-pressure/in-depth/blood-pressure/art-20050982 (last visited Dec. 21, 2021).

United States v. Ackerman, No. 11-740-KSM-1, 2020 WL 5017618, at *5 (E.D. Pa. Aug. 25, 2020) (citing cases); see also United States v. Evans, No. 3:18-cr-637, 2021 WL 424317, at *2 (E.D. Mich. Feb. 8, 2021) (denying motion for compassionate release based on inmate's fear that his high blood pressure increased his risk of severe illness of COVID-19 where the inmate could take medication daily to manage his hypertension). Tolbert's medical records reflect that he has been prescribed medication for his hypertension, see 2d Medical Records at PageID.254; thus, there is no reason to believe that Tolbert's hypertension could not be controlled through medication. The fact that Tolbert apparently "does not want to be on medication," id. at PageID.282, does not alter this fact.

Next, although the CDC recognizes sickle cell disease as a condition that can increase an individual's likelihood of severe illness from COVID-19, it does not recognize sickle cell trait as such a condition.[6] To be clear, sickle cell disease is not the same as sickle cell trait; unlike people with sickle cell disease, people with sickle cell trait "rarely have any clinical symptoms related to the disease."[7]

Finally, while the CDC recognizes that "[h]aving mood disorders, including depression, and schizophrenia spectrum disorders can make you more likely to get severely ill from COVID-19,"[8] anxiety is not a mood disorder.[9] Tolbert's medical records do not reflect that he has a mood

---

[6] CDC, "People with Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 14, 2021).

[7] National Heart, Lung, and Blood Institute, "Questions and Answers About Sickle Cell Trait," https://www.nhlbi.nih.gov/news/2010/questions-and-answers-about-sickle-cell-trait (last visited Dec. 14, 2021).

[8] CDC, "People with Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 14, 2021).

[9] Compare Mayo Clinic, "Mood Disorders," https://www.mayoclinic.org/diseases-conditions/mood-disorders/symptoms-causes/syc-20365057 (last visited Dec. 14, 2021), with

disorder; rather, a medical note from February 2021 indicates that Tolbert's mental health is normal and that his "[m]ood" is "[a]ppropriate to [c]ontent." 2d Medical Records at PageID.274. Tolbert's anxiety disorder "is neither an actual nor potential COVID-19 risk factor." United States v. Richardson, No. 5:18-CR-00291-3, 2021 WL 1526431, at *4 (E.D. Pa. Apr. 19, 2021).

There is another reason that Tolbert's fear of contracting COVID-19 is non-compelling. The Sixth Circuit clarified that "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction." Lemons, 15 F.4th at 751. Tolbert's access to the vaccine is evinced by his vaccination status. According to his health records, Tolbert received the one-dose Janssen vaccine in June 2019. 2d Medical Records at PageID.286, 297.

Additionally, current conditions at FCI Milan undercut Tolbert's argument that he is likely to contract the virus. Of the 1,477 inmates at FCI Milan,[10] 1,034 have been vaccinated (70%).[11] Further, there are currently no active cases among inmates, and only two among staff.[12]

Thus, Tolbert's fear of contracting COVID-19 is not an extraordinary or compelling reason to grant him compassionate release. Even if it were, Tolbert's release would still be unwarranted based on the § 3553(a) factors, as explained below.

---

Mayo Clinic, "Anxiety Disorders," https://www.mayoclinic.org/diseases-conditions/anxiety/symptoms-causes/syc-20350961 (last visited Dec. 14, 2021).

[10] BOP, "FCI Milan," https://www.bop.gov/locations/institutions/mil/ (last visited Dec. 14, 2021).

[11] BOP, "COVID-19 Vaccine Implementation," https://www.bop.gov/coronavirus/ (last visited Dec. 27, 2021).

[12] BOP, "COVID-19 Cases," https://www.bop.gov/coronavirus/ (last visited Dec. 27, 2021).

### B. Section 3553(a) Factors

Before granting a sentence reduction under the FSA, the Court must consider the § 3553(a) factors, which include the nature and circumstances of a defendant's offenses, the seriousness of the offenses, the need to promote respect for the law, and the need to protect the public from further crimes by the defendant. After weighing these factors in August of this year, the Court found that they favored 46 months' imprisonment. See 8/17/21 Judgment. There is no reason to reach a different conclusion now, just a few months later.

Tolbert argues that he has "no incident reports in [the] last five years" and that he is "not a danger or threat to society." Mot. at 2. However, Tolbert's criminal conduct underlying his supervised release violations shows that he has recently and repeatedly engaged in serious and violent criminal behavior. Only a few months after being released from his eight-year sentence for armed robbery and possession of a short-barreled shotgun, Tolbert committed a series of new crimes, in violation of his supervised release conditions. Tolbert was arrested for carrying a concealed weapon, being a felon in possession of a firearm, being a felon in possession of ammunition, altering a serial number on a gun, and driving with a suspended license. Am. Pet. at 2 (Dkt. 31). Tolbert was then cited by the Saginaw County Sheriff's Department for smuggling cocaine into jail. Id. at 3. While in jail, Tolbert was charged with sexually assaulting another inmate. Id.

Tolbert suggests that if released he would not engage in further criminal activity because he has strong family support and a job waiting for him. Mot. at 2–3. But the fact that Tolbert committed these recent offenses just months after being released from a lengthy sentence for other serious crimes shows that he is not easily deterred. If released now, there is a significant likelihood that he would commit more crimes that endanger the safety of community members. Further,

7

releasing Tolbert when he has served only approximately one-third of his sentence would not provide just punishment or promote respect for the law. See, e.g., Ruffin, 978 F.3d at 1008 (affirming district court decision that § 3553(a) factors did not support a sentence reduction in part because the defendant had served less than half of his sentence); United States v. Richards, No. 12-20372, 2021 WL 912389, at *3 (E.D. Mich. Mar. 10, 2021) ("[A]llowing Defendant to be released after serving less than half of his sentence would not promote respect for the law or proper deterrence, [or] provide just punishment . . . .").

The § 3553(a) factors, therefore, weigh heavily against granting Tolbert's motion.

## II. CONCLUSION

For the reasons stated above, Tolbert's motion for compassionate release (Dkt. 55) is denied.

SO ORDERED.

Dated: December 27, 2021  
Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 27, 2021.

s/Karri Sandusky  
KARRI SANDUSKY  
Case Manager